## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **MARLENE MOORE,** | ) | |
| **Individually and as Executrix of the** | ) | |
| **Estate of Jared Michael Moore, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 05-2556-KHV** |
| **BOARD OF COUNTY COMMISSIONERS** | ) | |
| **OF THE COUNTY OF LEAVENWORTH,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____)

### MEMORANDUM AND ORDER

Marlene Moore, as executrix of the Estate of Jared Moore, brings suit under 42 U.S.C. §§ 1983 and 1988 to recover money damages for violations of his rights under the Fourth and Fourteenth Amendments, as well as injunctive and declaratory relief. Marlene Moore and Patrick Moore also bring suit under 42 U.S.C. §§ 1983 and 1988 seeking money damages for violations of their own rights under the First Amendment, as well as declaratory and injunctive relief. Plaintiffs also allege violations of the Kansas Constitution, the Kansas Open Records Act, K.S.A. § 45-215 et seq., and the Kansas Tort Claims Act, K.S.A. § 75-6101 et seq.

This matter is before the Court on Defendants Board Of County Commissioners Of The County Of Leavenworth, Kansas, Navinsky, Graeber, Oroke, Zoellner, And Nye's Motion For Summary Judgment (Doc. #69), Defendant Robert L. Peterman's Motion For Summary Judgment (Doc. #71) and Plaintiffs' Motion For Partial Summary Judgment, For Declaratory Judgment And For Preliminary

Injunction (Doc. #74), all filed October 13, 2006, as well as plaintiffs' <u>Motion To Strike Affidavit Of</u>

<u>Robert Peterman On Training</u> (Doc. #88) filed November 27, 2006.  For reasons stated below, the Court

sustains defendants' motions for summary judgment and overrules plaintiffs' motion for summary judgment

and motion to strike.

<u>**Summary Judgment Standards**</u>

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that

the moving party is entitled to a judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56(c); <u>accord</u> <u>Anderson</u>

<u>v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986); <u>Vitkus v. Beatrice Co.</u>, 11 F.3d 1535, 1538-39

(10th Cir. 1993).  A factual dispute is "material" only if it "might affect the outcome of the suit under the

governing law."  <u>Anderson</u>, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere

scintilla of evidence.  <u>Id.</u> at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material

fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Hicks v. City of Watonga</u>, 942 F.2d 737, 743

(10th Cir. 1991).  Once the moving party meets its burden, the burden shifts to the nonmoving party to

demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the

burden of proof."  <u>Applied Genetics Int'l, Inc. v. First Affiliated §., Inc.</u>, 912 F.2d 1238, 1241 (10th Cir.

1990); <u>see also</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986);

<u>Bacchus Indus., Inc. v. Arvin Indus., Inc.</u>, 939 F.2d 887, 891 (10th Cir. 1991).  The nonmoving party may

not rest on her pleadings but must set forth specific facts.  <u>Applied Genetics</u>, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the parties opposing the motion for

– 2 –

summary judgment.  Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991).  Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative.  Anderson, 477 U.S. at 250-51.  "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial."  Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 251-52.

### Factual Background

The following material facts are uncontroverted, deemed admitted or, where disputed, viewed in the light most favorable to plaintiff.

Marlene and Patrick Moore are the parents and heirs of Jared Moore.  Marlene Moore is the executrix of the estate of Jared Moore.  Donald Navinsky, Clyde Graeber and Dean Oroke are elected county commissioners of Leavenworth County, Kansas (the "County"), and sit on the Board of County Commissioners of the County of Leavenworth (the "Board").  Until January 11, 2005, Herb Nye was the elected sheriff of Leavenworth County.  David Zoellner is the current elected sheriff of Leavenworth County.  Robert Peterman is a deputy with the Leavenworth County Sheriff's Department ("the Department").  John Does 1 and 2 are unidentified deputies with the Department.

Shortly before midnight on December 28, 2004, the Department dispatched Deputy Peterman to an automobile accident near the intersection of 158th Street and Donahoo Road in Leavenworth County.  Deputy Peterman responded to the scene in his patrol car with emergency lights illuminated, but without

activating the siren on his patrol car.[1]

Jared Moore was a volunteer firefighter with the Fairmont Township Fire Department ("FTFD"). The Department dispatches the FTFD as a first responder. When dispatched as first responders, firefighters with the FTFD respond in personal vehicles, and those with gear immediately available respond directly to the scene, rather than first reporting to the fire station. It is common practice for more than one firefighter to respond to an emergency call.

On December 28, 2004, Jared Moore, driving his personal vehicle with hazard lights activated, also responded to the accident near 158th Street and Donahoo Road. Jared Moore's vehicle did not have emergency equipment, and was not equipped with a two-way radio. Deputy Peterman was aware that firefighters were responding to the accident scene. Deputy Peterman could locate first responders through visual observation, or by asking dispatchers for their locations and/or monitoring his scanner.[2] Deputy

---

[1]     Deputy Peterman testified that he had activated the siren on his patrol car, but another eyewitness testified as follows:

Q.     Did [Deputy Peterman] have his siren on?
A.     No.

Q.     Have you ever told anybody before that you weren't sure whether he had his siren on?
A.     I don't believe he had his siren on. I don't know if I told anybody that or not. I don't think he had his siren on, because all I heard sounded like to me was engine, transmission, exhaust. It was just a roar. I don't believe he had his siren on . . . I didn't hear a siren.

Deposition of Gayln Gorup, Exhibit 8 attached to Plaintiffs' Memorandum In Opposition To Defendants' Motion For Summary Judgment (Doc. #90) at 35:13-25, 36:1-4. This evidence, viewed in the light most favorable to plaintiff, suggests that Deputy Peterman did not activate the siren on his patrol car.

[2]     Deputy Peterman had no way of directly communicating with first responders. Deputy Peterman could only hear first responder communication with dispatchers by using his scanner to monitor the appropriate frequency.

– 4 –

Peterman turned off his scanner while responding to the accident on December 28, 2004.[3]

As Jared Moore and Deputy Peterman traveled north on 155th Street, Deputy Peterman approached Jared Moore's vehicle from behind, traveling 90 to 94 miles per hour.[4]  As Deputy Peterman approached Jared Moore's vehicle, he moved into the southbound lane of 155th Street.  At about the same time, Jared Moore began to make a left turn onto Donahoo toward the accident scene.  As Jared Moore began his turn, Deputy Peterman steered back to the right, partially into the northbound lane of 155th Street, then swerved back across the center line into the southbound lane where his patrol car collided with the rear end of Jared Moore's vehicle at the intersection of 155th Street and Donahoo Road.  Deputy Peterman should have turned left onto Donahoo Road toward the accident scene, but he did not.[5]  At the time of impact, Deputy Peterman's patrol car was traveling at approximately 84 to 87 miles per hour.[6]

---

[3]     Deputy Peterman testified that this was routine when responding to an injury accident because he had difficulty listening to communication over the radio and scanner at the same time.  He testified that communication with the dispatcher over his radio took priority over communication on the scanner.

[4]     Deputy Peterman admits that he made a conscious choice to proceed at this speed.

[5]     After the accident, Deputy Peterman told another officer that he always confused Donahoo Road with a road north of Donahoo Road.  Deputy Peterman also told a Leavenworth County Emergency Coordinator that he "screwed up."  Lieutenant Andrew Dedeke, Deputy Peterman's superior, described his interaction with Deputy Peterman after the accident as follows:

> He was starry eyed, kind of in a daze.  He kept asking me about the accident.  As far as there at the hospital I don't think he told me anything, outside of maybe I recall something about his saying, "I didn't see him, I didn't see him," or "He turned in front of me."

Deposition of Andrew Dedeke, Exhibit 7 attached to Plaintiffs' Memorandum (Doc. #90) at 58:22-25, 59:1-2.

[6]     One week before the accident, Deputy Peterman took in his patrol car for brake
(continued...)

– 5 –

Jared Moore was ejected from his vehicle, suffered severe injuries and died the following day.

Jared Moore's family erected a roadside memorial at the accident site immediately following his death.  In September of 2005, the Moores discovered that the memorial was gone.  In October of 2005, after they had replaced the memorial, they discovered that it had again been removed.  The Moores do not know who removed the memorial.  They replaced it again in December of 2005, and it has remained undisturbed since that time.

A jury acquitted Deputy Peterman of vehicular homicide in connection with the collision.[7]  Sheriff's deputies were present in the courtroom during trial.  They were not friendly to Marlene Moore and gave her "dirty looks."

At approximately 2:30 p.m. on September 19, 2005, an unidentified sheriff's deputy followed the Moore's daughter as she drove Marlene Moore's car home from an appointment.  At approximately 10:05 p.m. on September 22, 2005, an unidentified sheriff's deputy rapidly approached the Moore's vehicle from behind, followed them closely and then drove away.  The Moores have not been followed again since September 22, 2005.[8]

_____

[6](...continued)
maintenance.  He made no other complaints about the operation of his vehicle.

[7]        Lieutenant Dedeke testified that he supported the filing of criminal charges against Deputy Peterman because, in his opinion, Deputy Peterman was not operating his patrol car in a reasonable and prudent manner under Kansas law at the time of the accident.

[8]        The amended complaint names these unidentified deputies as John Does 1 and 2.  Plaintiffs have attempted to identify these deputies through examination of the Department's Daily Activity Logs which reflect the activities of deputies by date, time and location.  Defendants produced these logs, covering the evening shifts of September 19 and 22, 2005, during discovery.  Plaintiffs' counsel, in a declaration under 28 U.S.C. § 1746, states that "Daily Activity Logs for many Patrol Division employees for the shifts (continued...)

On three or four occasions following Jared Moore's death, Marlene and Patrick Moore made statements to the media regarding the accident and the contents of the accident report prepared by the Kansas Highway Patrol.  Patrick Moore admits that neither the removal of the memorial, the presence of deputies in the courtroom during Deputy Peterman's trial nor the two incidents of being followed have stopped him from speaking out about Jared Moore's death.  Since Jared Moore's death, Patrick Moore has spoken about emergency response safety issues with the Kansas State Firefighters Association, the National Fallen Firefighters Foundation and a United States congressperson from Pennsylvania.[9]  After being tailed by officers and deputies, Marlene Moore has declined to speak about Jared Moore's death for fear of retaliation.  Since the accident Marlene and Patrick Moore have written Dennis Moore, their congressperson, advocating changes in the law regarding emergency response.[10]

The Department trained Deputy Peterman when he transferred to the patrol division.  This training included a "Field Training Program," which lasted for approximately six weeks.  This training involved driving a patrol car under supervision, responding to calls from dispatchers and instruction on the use of the patrol car siren.[11]  The Department did not provide additional field training unless Department policy

---

[8](...continued)
when [the alleged harassment] took place were missing from the defendants' production."  Declaration Of Patrick J. Doran Pursuant To 28 U.S.C. § 1746, Exhibit 9 attached to Plaintiffs' Memorandum (Doc. #90) ¶ 10.

[9]       The record does not reveal the identity of this congressperson.

[10]      The record does not reveal when this letter was written.

[11]      The Department instructed deputies to activate patrol car lights and sirens simultaneously, not independently.  Deputy Peterman understood that he was required to comply with Department guidelines, and that he could not disregard the rules of the road unless he operated his patrol car in
(continued...)

changed or an individual deputy violated Department policy.  The Department also gave Deputy Peterman a training manual, and tested him over the material covered in that manual.  Deputy Peterman learned CPR and basic first aid.  He completed his officer certification through the Kansas Law Enforcement Training Center.[12]

The Department requires all deputies to operate their patrol cars in a safe and prudent manner.  Specifically, the Department maintains a written policy that deputies may not exceed ten miles per hour over the posted speed when responding to an emergency call.[13]  On Deputy Peterman's first day in patrol

---

[11](...continued)
"emergency standard," with lights and sirens activated.

[12]     Plaintiffs object to the evidence regarding Deputy Peterman's training.  Such evidence, however, is offered only to bolster plaintiffs' supervisor liability claims, and those claims are deficient as a matter of law, regardless of Deputy Peterman's training.  In light of the Court's resolution of plaintiffs' claims, the motion to strike is overruled as moot.

[13]     This evidence is taken from the transcript of Edwards Cummings' testimony during Deputy Peterman's criminal trial.  Specifically, Cummings testified as follows:

Q.     Okay.  So this discussion about whether or not someone in your job should go more than ten miles over the limit, is there actually a written policy on that or not?
A.     Yes.

Q.     There is a written policy on it?
A.     Yes.

Exhibit 10 attached to Plaintiffs' Memorandum (Doc. #90) at 60:6-12.  The record does not reveal Cummings' position within the Department.

Defendants object that the transcript is not proper evidence under D. Kan. R. 56.1(d), which provides that "[a]ll facts . . . shall be presented by affidavit, declaration under penalty of perjury, and/or relevant portions of pleadings, depositions, answer to interrogatories and responses to requests for admissions."  The Tenth Circuit has stated that "it is proper to consider a certified transcript on a motion for summary judgment."  Fisher v. Shamburg, 624 F.2d 156, 162 n.7 (10th Cir. 1980).  Here, the index of the transcript indicates that the reporter has certified the transcript.  See Exhibit 10 attached to Plaintiffs'
(continued...)

division, Lieutenant Duncanson, his superior, informed him of the policy that deputies were not to exceed ten miles an hour over the posted speed limit when responding to emergency calls. Peterman referred to this policy as a "Lieutenant Duncanson Rule." Since at least 1994, Lieutenant Duncanson told deputies that "he would support them up to ten miles an hour over the posted speed limit." The Department rarely enforced the policy.[14]

The Department uses citizen complaints, observation by other officers and accident history to assess the safety of a deputy's driving behavior. The Department does not require its employees to report violations of its policies. The Department does not maintain a system by which statements from the general public regarding violations of Department policy are documented. The Department has made no policy changes since the accident on December 28, 2004.

In the three years that he was in patrol division, Deputy Peterman drove his patrol car at more than ten miles an hour above the posted speed limit "maybe 100" times. Deputy Peterman's superiors asked him about his speed on one occasion. In September of 2004, Sergeant Yates verbally reprimanded Deputy Peterman for failing to terminate a pursuit when conditions and circumstances warranted. Before Deputy Peterman joined the Department, while he was employed in the Atchinson County Sheriff's Department, he rear-ended another vehicle while on duty.[15]

---

[13](...continued)
Memorandum (Doc. #90) at 2. Thus, the Court will consider the transcript on summary judgment.

[14]    Deputy Peterman testified that he could recall only one deputy having been disciplined for exceeding ten miles per hour over the posted speed limit. Lieutenant Dedeke testified that the Department did not discipline him for an incident in which he violated the policy. Deputy Cummings testified similarly.

[15]    The record suggests that this was a minor accident; Deputy Peterman's patrol car suffered
(continued...)

Under 42 U.S.C. §§ 1983 and 1988, plaintiffs allege that (1) the wrongful conduct of Deputy Peterman, along with the policies and customs of the Board, Commissioners Navinsky, Graeber and Oroke, Sheriff Zoellner and former Sheriff Nye violated Jared Moore's rights under the Fourth and Fourteenth Amendments of the United States Constitution; and (2) the wrongful conduct of unidentified deputies John Does 1 and 2, along with the policies and customs of the Board, Commissioners Navinsky, Graeber and Oroke, and Sheriff Zoellner violated the rights of Marlene and Patrick Moore under the First Amendment of the United States Constitution.[16]  Plaintiffs also allege violations of the Kansas Constitution, the Kansas Open Records Act, K.S.A. § 45-215 et seq., and the Kansas Tort Claims Act, K.S.A. § 75-6101 et seq.

Defendants seek summary judgment on plaintiffs' federal constitutional claims, and ask the Court to dismiss the remaining state claims under 28 U.S.C. § 1367(c).  Plaintiffs seek summary judgment on their claims for injunctive and declaratory relief related to alleged violations of the Fourth and Fourteenth Amendments.

---

[15](...continued)
no damage.

[16]     Plaintiffs' invocation of Section 1988 does not create independent causes of action, but defines procedures under which remedies may be sought in plaintiffs' Section 1983 claims.  See Hidahl v. Gilpin County Dep't of Soc. Servs., 938 F.2d 1150, 1152 (10th Cir. 1991).

<u>**Analysis**</u>

**I.     Plaintiffs' Claims Against Deputy Peterman**

Plaintiffs allege that Deputy Peterman inflicted deadly force on Jared Moore and that he is liable

under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments.[17]

**A.     Fourth Amendment Claim**

Plaintiffs allege that Deputy Peterman seized Jared Moore unreasonably and through the use of

excessive force in violation of the Fourth Amendment.  Defendants argue that Deputy Peterman is entitled

to summary judgment on this claim because the record contains no evidence that he intended to seize Jared

Moore within the meaning of the Fourth Amendment.  Plaintiffs respond that Deputy Peterman seized Jared

Moore because immediately before colliding with Jared Moore's vehicle, he pulled his patrol car to the

right, partially into the northbound lane of 155th Street, but then swerved back across the center line where

the accident then occurred.[18]

---

[17]     Plaintiffs allege that Deputy Peterman is liable in his official and individual capacities, but do not distinguish between the two types of claims.  Because plaintiffs seek to impose personal liability on Deputy Peterman for actions taken under color of state law, plaintiffs' claims are properly characterized only as individual liability claims.  <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. at 165.  To the extent that plaintiffs allege official capacity claims against Deputy Peterman, those claims are, in reality, claims against Leavenworth County (the government entity of which Deputy Peterman is an agent), <u>Monell</u>, 436 U.S. at 690 n.55, and are equivalent to plaintiffs' claims asserted against other government officials and entities, including the Board, <u>Stevenson v. Whetsel</u>, 52 Fed. Appx. 444, 446 (10th Cir. 2002).  Any official capacity claims against Deputy Peterman will be considered along with plaintiffs' claims against the Board, discussed below.

[18]     Plaintiffs' response to Deputy Peterman's motion for summary judgment misconstrues their Fourth Amendment claim.  Specifically, plaintiffs claim to have alleged a "Fourth Amendment substantive due process" claim.  Such claim does not exist; the Fourth Amendment does not contain due process protection.  To the extent that plaintiffs' arguments involve an alleged unreasonable seizure under the Fourth Amendment, however, the Court will consider those arguments.

The Fourth Amendment provides an explicit textual source of constitutional protection from the use of unreasonable or excessive force in effectuating a seizure. Graham v. Connor, 490 U.S. 386, 395 (1989). To establish a Fourth Amendment violation, plaintiffs must show that Deputy Peterman terminated Jared Moore's freedom of movement "through means intentionally applied." Brower v. County of Inyo, 489 U.S. 593, 596-97 (1989) (seizure requires that "person be stopped by the very instrumentality set in motion or put in place in order to achieve that result"); accord Apodaca v. Rio Arriba County Sheriff's Dep't, 905 F.2d 1445, 1447 (10th Cir. 1990). The Supreme Court has drawn a clear distinction between negligent restraint which gives rise to tort liability and an intentional seizure which may violate the Fourth Amendment. See Brower, 489 U.S. at 596-97 (restraint must be intentional, not merely negligent, to constitute Fourth Amendment seizure). The intent necessary to create a Fourth Amendment seizure cannot be inferred from an act that is only negligent; evidence of actual intent is necessary to establish a Fourth Amendment seizure because one restrained accidentally, even recklessly, does not have a constitutional complaint. Apodaca, 905 F.2d at 1447 (citing Brower, 489 U.S. at 597).

Plaintiffs presumably offer evidence that Deputy Peterman swerved as evidence that he intended to collide with Jared Moore's vehicle. Such evidence is insufficient, however, to establish the requisite intent. Deputy Peterman stated that he confused the location of the emergency to which he was responding, and as a result, he did not attempt to turn onto Donahoo Road when he should have. He attempted to continue on 155th Street, past Donahoo Road, by passing Jared Moore's vehicle in the left lane of 155th Street. At the time that Deputy Peterman began to pass Jared Moore's vehicle, Jared Moore began to turn left, and Deputy Peterman collided with his vehicle.

On this record, no reasonable jury would conclude that Deputy Peterman intended to collide with

Jared Moore's vehicle.  In fact, Deputy Peterman's comments to Lieutenant Dedeke after the accident clearly suggest that the collision was unintentional.[19]  The facts of this tragic case do not suggest that Deputy Peterman intended to terminate Jared Moore's freedom of movement.[20]  Without such evidence, plaintiffs cannot establish an actionable seizure under the Fourth Amendment. Apodaca, 905 F.2d at 1447 (citing Brower, 489 U.S. at 597) (seizure must be wilful to be actionable under the Fourth Amendment).  Plaintiffs have not demonstrated a genuine issue of material fact whether Deputy Peterman intended to terminate Jared Moore's freedom of movement, thereby unreasonably seizing him under the Fourth Amendment. Deputy Peterman is therefore entitled to summary judgment on plaintiffs' Fourth Amendment claim.

### B.    Fourteenth Amendment Claims

Plaintiffs assert claims against Deputy Peterman under the substantive and procedural due process clauses of the Fourteenth Amendment.

### I.    Substantive Due Process

Plaintiffs allege that Deputy Peterman caused Jared Moore's death through deliberate and/or reckless indifference, shocking the conscience and thereby violating the substantive due process clause of the Fourteenth Amendment.  Defendants argue that Deputy Peterman is entitled to qualified immunity on the claim against him in his individual capacity.  Plaintiffs respond that Deputy Peterman is not

---

[19]    As noted above, Lieutenant Dedeke testified that after the accident, Deputy Peterman said to him either "I didn't see him" or "he turned in front of me."

[20]    In contrast to the facts of this case, the requisite intent may be found where a police officer apprehends a fleeing suspect by purposefully shooting the suspect, see Tennessee v. Garner, 471 U.S. 1, 7 (1985), or where police officers employ a roadblock designed to stop a suspect by physical impact, see Brower, 489 U.S. at 598.  Here, it cannot be said that Deputy Peterman set out to restrain Jared Moore through an instrumentality (his patrol car) set in motion or put in place in order to achieve such restraint. See Brower, 489 U.S. at 596-97.

entitled to qualified immunity because he violated Jared Moore's constitutional rights.

Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Gross v. Pirtle, 245 F.3d 1151, 1155 (10th Cir. 2001) (quoting Malley v. Briggs, 475 U.S. 335, 341(1986)). Once qualified immunity has been raised, plaintiff has the burden to establish that (1) defendant's actions violated a constitutional or statutory right and (2) the right was "clearly established" at the time of the relevant conduct.  See Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).  If plaintiff satisfies this two-part burden, defendant must demonstrate that his actions were objectively reasonable in light of the law and the information he possessed at the time.  See Martin v. Bd. of County Comm'rs, 909 F.2d 402, 405 (10th Cir. 1990).  Qualified immunity will only relieve defendant of individual liability.  Harlow, 457 U.S. at 818.

Defendants argue that plaintiffs cannot establish the constitutional violation necessary to defeat Deputy Peterman's qualified immunity claim because they cannot show that Deputy Peterman intended to harm Jared Moore.  Plaintiffs do not respond to defendants' arguments with regard to substantive due process.[21]

––––––––––––––––––––––––––––

[21]  Plaintiffs' entire response to the arguments with regard to their substantive due process claim is as follows:

As stated in plaintiffs' previous Memorandum, subsequent to the filing of defendants' motion for summary judgment, this Court issued its ruling that addressed plaintiffs'

(continued...)

The Tenth Circuit recently reemphasized the distinction between tort actions and substantive due process claims, stating that the Fourteenth Amendment is not a "font of tort law to be superimposed upon whatever systems may already be administered by the States." Perez v. Unified Gov't of Wyandotte County/Kansas City, Kan., 432 F.3d 1163, 1166 (10th Cir. 2005) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 848 (1998)).  Only government conduct that "shocks the conscience" can give rise to a substantive due process claim.  Id.  Perez laid the groundwork for determining when an emergency response vehicle engages in conduct which shocks the conscience, holding that "[w]hen government officials face a situation 'calling for fast action,' only official conduct done with an intent to harm violates the Fourteenth Amendment."  Id. (citing Lewis, 523 U.S. at 853).  Such situations demand immediate

_____

[21](...continued)
substantive due process claims.  Therein, the Court addressed plaintiffs' Fourteenth Amendment substantive due process claims, which is also the focus of much of defendant Peterman's argument.  In light of the Court's ruling, further argument by plaintiffs here in favor of Fourteenth Amendment substantive due process claims would be inappropriate.

Plaintiffs' Memorandum (Doc. #90) at 14.
    Plaintiffs' response is not a model of clarity.  Apparently, plaintiffs believe that the Court previously dismissed their substantive due process claim.  See Plaintiffs' Response To The Court's Show Cause Order On Procedural Due Process Claims (Doc. #83) filed November 6, 2006, at 2 ("Plaintiffs also interpret this Court's ruling as dismissing only the substantive due process claims for damages against Peterman under the Fourteenth Amendment.").  Plaintiffs are mistaken, however, as the Court has not previously dismissed their substantive due process claim.  See Memorandum And Order And Order To Show Cause (Doc. #77) filed October 23, 2006, at 9 ("Plaintiff has therefore alleged the deprivation of a constitutional right which was clearly established at the time of the violation, and Deputy Peterman is not entitled to qualified immunity on plaintiffs' Fourteenth Amendment substantive due process claim.").
    By their lack of meaningful response, plaintiffs have functionally conceded defendants' arguments on the merits of the substantive due process claim.  Despite this concession, the Court must nevertheless consider the appropriateness of summary judgment with regard to the claim.  See Reed v. Bennett, 312 F.3d 1190, 1194-95 (10th Cir. 2002) (where nonmoving party fails to respond, Court may not sustain motion without first ensuring that summary judgment is appropriate).

-15-

response without time for deliberation, and "even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates the large concerns of the governors and the governed." Lewis, 523 U.S. at 853 (internal quotations and citations omitted).  The intent to harm standard "applies in rapidly evolving, fluid, and dangerous situations which preclude the luxury of calm and reflective deliberation."  Terrell v. Larson, 396 F.3d 975, 978 (8th Cir. 2005) (en banc), quoted in Perez, 432 F.3d at 1167.  Under Perez, that standard is correctly applied where a firefighter or police officer is involved in an automobile accident while responding to an emergency call.  432 F.3d at 1167.  Such a situation "presents a paradigmatic example of a decision that must be made in haste and under pressure."  Id.

Here, it is uncontroverted that Deputy Peterman was responding to an emergency call when he collided with Jared Moore's vehicle.  The intent to harm standard therefore applies in this case.  As explained above, plaintiffs present no evidence from which a reasonable jury could find that Deputy Peterman intended to collide with Jared Moore's vehicle or otherwise intended to harm him.  Deputy Peterman may have acted with precipitate recklessness, but on the facts of this case, his conduct did not violate the substantive due process clause of the Fourteenth Amendment.  Because plaintiffs have not established a genuine issue of material fact with regard to a constitutional violation, they cannot overcome Deputy Peterman's claim of qualified immunity with respect to the substantive due process claim against him in his individual capacity.  Deputy Peterman is therefore entitled to summary judgment on plaintiffs' substantive due process claim.

### ii.    Procedural Due Process

Plaintiffs allege that Deputy Peterman inflicted deadly force on Jared Moore without due

-16-

process of law in violation of the Fourteenth Amendment.[22]   Defendants argue that (1) plaintiffs cannot

identify a protected interest of which Deputy Peterman deprived Jared Moore, and (2) post-deprivation

remedies obviate plaintiffs' constitutional claim.   Plaintiffs respond that Deputy Peterman deprived Jared

Moore of both liberty and property interests through the disregard of Department policy regulating the

maximum speed at which a deputy may operate his patrol car.[23]   Plaintiffs further respond that because

Deputy Peterman acted contrary to Department policy, the sole post-deprivation remedy – an independent

tort action – is insufficient to satisfy due process.

Procedural due process imposes constraints on governmental decisions which deprive individuals

of liberty or property interests within the meaning of the due process clause of the Fourteenth Amendment.

Mathews v. Eldridge, 424 U.S. 319, 332 (1976).   The essence of procedural due process is fair play,

Patrick v. Miller, 953 F.2d 1240, 1244 (10th Cir. 1992), and the fundamental due process requirement

is the opportunity to be heard "at a meaningful time and in a meaningful manner," Mathews, 424 U.S. at

333.   To determine whether Deputy Peterman denied Jared Moore procedural due process, the Court

must determine (1) whether Jared Moore possessed a protected interest to which due process is afforded,

and then (2) whether he received an appropriate level of process.   Copelin-Brown v. N.M. State Personnel

---

[22]   Plaintiffs have not specified the due process to which they claim Jared Moore was entitled. On October 23, 2006, the Court ordered plaintiffs to show good cause in writing why their procedural due process claim under the Fourteenth Amendment should not be dismissed for failure to state a claim upon which relief can be granted. See Memorandum And Order And Order To Show Cause (Doc. #77) at 9. Because the parties have fully briefed the issue on summary judgment, however, the Court will evaluate the claim on the merits on summary judgment.

[23]   In their response, plaintiffs also argue that the Department used outdated communication equipment and failed to properly train and supervise Deputy Peterman. These arguments speak to possible claims against the County, but do not establish a constitutional violation by Deputy Peterman.

Office, 399 F.3d 1248, 1254 (10th Cir. 2005).

### a. Protected Interests

To determine whether procedural due process requirements may apply, the Court must consider the nature, rather than the weight, of the interest at stake.[24] Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 570-71 (1972). The existence of a protectable interest is a question of law for the Court. Tarabishi v. McAlester Reg'l Hosp., 827 F.2d 648, 652 (10th Cir. 1987). Plaintiffs argue that defendants deprived Jared Moore of both property and liberty interests, but do not describe an independent violation of either interest. Indeed, plaintiffs conflate the two distinct interests for purposes of arguing a procedural due process violation. See Plaintiffs' Memorandum (Doc. #90) at 14 (identifying four "aspects" of defendants' violation of plaintiffs' liberty and property interests under the Fourteenth Amendment).

A property interest is created and defined by existing rules or understandings that stem from sources independent of the Constitution, e.g. state law, secure certain benefits and support claims of entitlement to those benefits. Roth, 408 U.S. at 577. Plaintiffs' identify the extent of Jared Moore's alleged property interest as follows:

> . . . a property interest [] is apparent from state law, from state constitutional protections down to the procedures within the Leavenworth County Sheriff's Department.

Plaintiffs' Response To The Court's Show Cause Order On Procedural Due Process Claims (Doc. #83)

---

[24] The Court notes that the Fourteenth Amendment is not implicated by a purely negligent act of an official causing unintended loss of or injury to life, liberty or property. Daniels v. Williams, 474 U.S. 327, 328 (1986). As noted above, however, a reasonable jury could conclude on the facts of this case that Deputy Peterman's conduct constituted more than mere negligence. The Court, therefore, will consider plaintiffs' procedural due process claim.

at 8.  Plaintiffs do not identify a specific state or local law which creates such a property interest, <u>see</u> <u>Logan v. Zimmerman Brush Co.</u>, 455 U.S. 422, 430 (1982) (hallmark of property is individual entitlement grounded in state law, which cannot be removed except "for cause"), and the Court will not construct plaintiffs' arguments or theories absent coherent discussion of the issues.  <u>See</u> <u>Schelin v. Haun</u>, 92 Fed. Appx. 688, 691 (D. Kan. 2004) (citing <u>Drake v. City of Fort Collins</u>, 927 F.2d 1156, 1159 (10th Cir. 1991)).  Because they have not identified any property interest which has attained "constitutional status by virtue of the fact that [it] has been initially recognized and protected by state law," plaintiffs cannot maintain a procedural due process claim based on the alleged deprivation of a property interest in violation of the Fourteenth Amendment.  <u>Hinsdale v. City of Liberal</u>, 19 Fed. Appx. 749, 765 (10th Cir. 2001) (citing <u>Paul v. Davis</u>, 424 U.S. 693, 710 (1976)).

A liberty interest may arise from the Constitution itself, by reason of the guarantees implicit in the word "liberty," or it may arise from an expectation or interest created by state laws or policies.  <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2005) (internal citations omitted).  Liberty interests, though not precisely defined, certainly  include freedom from bodily restraint.  <u>Ingraham v. Wright</u>, 430 U.S. 651, 673-74 (1977).  A regulation which substantively limits the exercise of official discretion through specifically defined criteria that guide official decisionmaking may create a liberty interest.  <u>Aguilera v. Kirkpatrick</u>, 241 F.3d 1286, 1293 (10th Cir. 2001).  Regulations or statutes which permit official discretion in decisionmaking, however, do not create liberty interests.  <u>Id.</u>

As noted above, plaintiffs argue that Deputy Peterman deprived Jared Moore of liberty by disregarding Department policy and driving his patrol car at more than ten miles per hour above the posted speed limit, causing the collision which killed Jared Moore.  The record reveals that this policy was not

–19–

mandatory, however, and that it did not strip Deputy Peterman of discretion in operating his patrol car. Lieutenant Duncanson's description of the policy suggests that the policy guided the Department's reaction to deputies who chose to exceed the posted speed limit, i.e. the Department would support a deputy's decision to exceed the posted speed limit, but only up to ten miles per hour in excess, implying that deputies who violated the rule would be on their own to justify the violation.   Moreover, the Supreme Court has recognized that the "deep-rooted nature of law-enforcement discretion" may supplant even "seemingly mandatory" commands. Town of Castle Rock v. Gonzales, 125 S. Ct. 2796, 2806 (2005).

Here, the Court finds as a matter of law that Department policy which limited deputies' driving speeds did not create a liberty interest under the Fourteenth Amendment for Jared Moore.  Because a deputy could exercise discretion in proceeding at more than ten miles per hour in excess of the posted speed limit, the policy did not sufficiently limit official decisionmaking though specific criteria so as to create an expectation of protection.   The practical necessity for discretion inherent in the Department's policy defeats plaintiffs' claimed liberty interest arising out of the policy. See id. Because the Department policy did not create a protectable liberty interest, plaintiffs cannot maintain a procedural due process claim based on the alleged deprivation of such liberty interest.

### b.       Appropriate Level Of Process

Even assuming that plaintiffs had established a protectable interest of which Deputy Peterman deprived Jared Moore, defendants correctly argue that such interest is sufficiently protected by post-deprivation remedies.  Plaintiffs respond that any post-deprivation remedy is not sufficient because Deputy Peterman acted under Department policy and custom.  It is well established that random and unauthorized acts of government employees do not constitute procedural due process violations where

-20-

adequate post-deprivation remedies exist.  Palmer v. Unified Gov't of Wyandotte County/Kansas City, Kan., 72 F. Supp.2d 1237, 1252 (D. Kan. 1999) (citing Zinermon v. Burch, 494 U.S. 113, 128 (1990)); see also Parratt v. Taylor, 451 U.S. 527, 538 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 330-31 (1986) (normal pre-deprivation notice and opportunity to be heard is pretermitted if State provides adequate post-deprivation remedy).  Post-deprivation remedies, however, do not cure official conduct pursuant to an established or *de facto* policy, procedure or custom.  Gillihan v. Shillinger, 872 F.2d 935, 939 (10th Cir. 1989) (citing Logan, 455 U.S. at 436).  The key is the ability of the State to anticipate the deprivation so that it may feasibly provide a pre-deprivation hearing.  Zinermon, 494 U.S. at 132; see also Hudson v. Palmer, 468 U.S. 517, 533 (1984) (pre-deprivation procedures impracticable where government employee acts randomly or without authorization).

Plaintiffs have not demonstrated a genuine issue of material fact whether – in driving more than ten miles per hour above the posted speed limit – Deputy Peterman was acting pursuant to Department policy, procedure or custom.[25]  Moreover, defendants could not have practicably or feasibly offered Jared Moore any sort of pre-deprivation hearing.  See McClary v. O'Hare, 786 F.2d 83, 87 (2d Cir. 1986) (difficult to image what process State might have offered prior to unanticipated accident); Smith v. Bernier, 701 F. Supp. 1171, 1176 (D. Md. 1988) (analysis of possible pre-deprivation procedure in case of automobile accident "non-sensical").  "[W]here the State cannot predict and guard in advance against a

---

[25]     In fact, assuming that Department policy was sufficiently mandatory to create a liberty interest, Deputy Peterman was acting in direct contravention of that policy.  Such action does not prevent the Court from considering potential post-deprivation remedies.  See Scott v. Case Manager Owens (SCF), 80 Fed. Appx. 640, 643 n.2 (10th Cir. 2003) (post-deprivation procedure properly evaluated unless government employee acts in compliance with established policy or procedure).

deprivation, a postdeprivation tort remedy is all the process the State can be expected to provide, and it constitutionally sufficient." <u>Zinermon</u>, 494 U.S. at 115.  Defendants argue that Kansas law provides adequate state remedies for plaintiffs' procedural due process claim.  Specifically, defendants argue that Kansas law provides plaintiffs a common law negligence claim and statutory claims under the wrongful death statute, K.S.A. § 60-1901 <u>et seq.</u>, and the Kansas Tort Claims Act ("KTCA"), K.S.A. § 75-6101 <u>et seq.</u>  Plaintiffs do not dispute that they may assert such claims.  Indeed, plaintiffs have asserted a KTCA claim against Deputy Peterman.  <u>See Pretrial Order</u> (Doc. #76) filed October 19, 2006, at 9.  The availability of a claim under the KTCA provides plaintiffs an adequate post-deprivation remedy and extinguishes their procedural due process claim.  <u>See McCormick v. City of Lawrence</u>, 253 F. Supp.2d 1172, 1199 (D. Kan. 2003) (action under KTCA provides sufficient post-deprivation process).

Because plaintiffs have not established that Jared Moore possessed a protected interest to which due process is afforded, Deputy Peterman is entitled to summary judgment on plaintiffs' claim that he violated Jared Moore's procedural due process rights under the Fourteenth Amendment.  Deputy Peterman is further entitled to summary judgment on plaintiffs' procedural due process claim because the KTCA provides an adequate post-deprivation remedy.

## II. Plaintiffs' Claims Against John Does 1 And 2

Under 42 U.S.C. § 1983, plaintiffs allege that unidentified deputies John Does 1 and 2 are liable in their official and individual capacities for harassment which chilled the exercise of free speech by Marlene and Patrick Moore in violation of the First Amendment.  Defendants argue that the official-capacity claims against these parties should be dismissed because they are redundant of plaintiffs' official-capacity claims against Sheriff Zoellner.  Defendants also argue that all claims against these parties should be dismissed

because plaintiffs have failed to serve process on the unidentified deputies.  Plaintiffs respond that they have

diligently attempted to identify the deputies, but have been unable to so because of defendants' incomplete

discovery responses.[26]  Plaintiffs' failure to serve process on John Does 1 and 2 is dispositive of these

claims.

The Court may properly dismiss plaintiffs' claims against John Does 1 and 2 where plaintiffs,

without justification, have not identified or served process on those parties within the time allowed under

Rule 4(m), Fed. R. Civ. P.[27]  See Callahan v. Sw. Med. Ctr., No. CIV-03-1434-F, 2005 WL 1238770,

at *7 (W.D. Okla. Apr. 29, 2005), aff'd, 178 Fed. Appx. 837 (10th Cir. 2006); Montalvo v. Scott,

No. 94-3242-RDR, 1998 WL 159916, at *6 (D. Kan. March 29, 1998).  The record clearly indicates

that plaintiffs have not effected service of process on John Does 1 and 2 within the time required by Rule

4(m).[28]  Rule 4(m) requires the Court to consider whether good cause for such failure exists, and where

good cause is shown, plaintiffs are entitled to a mandatory extension of time.  Scott v. Hern, 216 F.3d 897,

---

[26]     Specifically, plaintiffs argue that defendants have produced only a portion of the requested Daily Activity Logs of deputies on duty during the evenings of September 19 and 22, 2005.

[27]     Rule 4(m), Fed. R. Civ. P., provides as follows:

If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

[28]     Plaintiffs filed their amended complaint on August 25, 2006.  First Amended Complaint For Declaration Of Rights Under The United States Constitution And Under Kansas Law, For Injunctive Relief And For Damages (Doc. #57).  Under Rule 4(m), plaintiffs were required to properly serve process on all defendants within 120 days, or by December 26, 2006.  As of January 19, 2006, the files and records of the Court do not disclose that plaintiffs have obtained service on John Does 1 and 2 or sought additional time to do so.

912 (10th Cir. 2000).  Without good cause shown by plaintiffs, the Court may in its discretion dismiss the case without prejudice or extend the time for service.  Id.

Plaintiffs argue that the Court should excuse their failure to identify or serve process on John Does 1 and 2 because defendants' incomplete discovery responses have prevented them from doing so.  Plaintiffs claim that certain Daily Activity Logs are missing from the documents which defendants produced during discovery, in response to plaintiffs' request for logs for the evenings of September 19 and 22, 2005.  Counsel's bare assertion that some logs are missing is insufficient to establish good cause under Rule 4(m).  To the extent that defendants' discovery responses are incomplete, plaintiffs' proper recourse is first to confer with opposing parties, making a good faith effort to resolve the dispute, and then, failing resolution through conference of the parties, to file a motion to compel with the Court.  See Fed. R. Civ. P. 37(a)(2)(B); D. Kan. R. 37.2; Payless Shoesource Worldwide, Inc. v. Target Corp., 237 F.R.D. 666, 670 (D. Kan. 2006).  Plaintiffs must certify compliance with conference requirements, "setting forth with particularity the steps taken to resolve the dispute."  Id. at 670-71.

Here, the record contains no evidence that plaintiffs attempted to confer with defendants regarding any missing Daily Activity Logs.  Further, even if the parties conferred in a good faith attempt to resolve such dispute, plaintiffs have not filed a motion to compel.  Accordingly, the Court finds that plaintiffs have not shown good cause for their failure to serve John Does 1 and 2.  Moreover, because plaintiffs have apparently made no effort to resolve the purported discovery dispute under Rule 37, the Court declines grant a discretionary extension of time.  Plaintiffs' claims against John Does 1 and 2 are therefore dismissed without prejudice for failure to serve process.

### III.    Plaintiffs' Claims Against The Board

Plaintiffs allege that the Board is liable under 42 U.S.C. § 1983 for Deputy Peterman's violations of the Fourth and Fourteenth Amendments, and for conduct of John Does 1 and 2, in violation of the First Amendment.  Defendants argue that the Board is entitled to summary judgment because (1) plaintiffs have not established an underlying constitutional violation, and (2) the alleged failure to train and supervise does not constitute deliberate indifference.

Plaintiffs' claims against the Board are equivalent to claims against Leavenworth County itself. Stevenson v. Whetsel, 52 Fed. Appx. 444, 446 (10th Cir. 2002) (citing Lopez v. LeMaster, 172 F.3d 756, 762 (10th Cir. 1999); see also Owens v. Rush, 636 F.2d 283, 286 (10th Cir. 1980) (board of county commissioners acts on behalf of county as its agent).  To create liability against a local governmental body under Section 1983, plaintiffs must show (1) a constitutional violation and (2) an official policy or custom which was the moving force behind the violation.  Stevenson, 52 Fed. Appx. at 446 (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 820 (1985)).  The challenged policy or custom need not be formal or written, Watson v. City of Kansas City, 857 F.2d 690, 695 (10th Cir. 1988), but plaintiffs must establish "a direct causal link between the [government] action and the deprivation of federal rights," Van Deelen v. Johnson, No. 05-4039-SAC, 2006 WL 1764381, at *14 (D. Kan. June 27, 2006) (citing Bd. of County Comm'rs v. Brown, 520 U.S. 397, 404 (1997)).

As explained above, plaintiffs have not established a genuine issue of material fact whether Deputy Peterman violated the Fourth or Fourteenth Amendments.  The Board is therefore entitled to summary judgment on plaintiffs' claims that it is liable under Section 1983 for Deputy Peterman's actions.  See Myers v. Oklahoma County Bd. of County Comm'rs, 151 F.3d 1313, 1316-17 (10th Cir. 1998) (regardless of

governmental policies, local government entity cannot conceivably be liable where officers inflict no constitutional harm).

With regard to plaintiffs' claim that the Board violated the First Amendment through the conduct of John Does 1 and 2, the Court must determine whether the unidentified deputies violated the First Amendment. See Myers, 151 F.3d at 1317 (where resolution of claim against government official fails to answer question whether official actually committed alleged constitutional violation, suit against government entity not inherently inconsistent). Even assuming that John Does 1 and 2 deprived Marlene and Patrick Moore of their First Amendment rights,[29] however, plaintiffs present no evidence of an official policy or custom which was the moving force behind the violations. Specifically, plaintiffs have not identified a policy which directed John Does 1 and 2 to harass Marlene and Patrick Moore, or a custom of "continuing, persistent and widespread" harassment. See Gates v. Unified Sch. Dist. No. 449, 996 F.2d 1035, 1041 (10th Cir. 1993). The two incidents of harassment by John Does 1 and 2 are discrete, isolated incidents which do not sustain plaintiffs' claim against the Board. See Van Deelen, 2006 WL 1764381, at *14.

Because plaintiffs have not shown a genuine issue of material fact whether Deputy Peterman violated Jared Moore's Fourth and Fourteenth Amendment rights or whether John Does 1 and 2 acted in conformity with official policy or custom in violating the First Amendment rights of Marlene and Patrick Moore, the Board is entitled to summary judgment on plaintiffs' claims.

---

[29]     To establish a First Amendment violation in this case, plaintiffs must show that (1) they engaged in constitutionally protected activity; (2) defendants' actions caused them to suffer an injury which would chill a person of ordinary firmness from continuing to engage in that activity; and (3) defendants' adverse action was substantially motivated as a response to their exercise of constitutionally protected conduct. See Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000).

IV.     **Plaintiffs' Claims Against Navinsky, Graeber and Oroke**

Plaintiffs allege that under 42 U.S.C. § 1983, Leavenworth County commissioners Navinsky, Graeber and Oroke are liable in their official capacities for violations of the First, Fourth and Fourteenth Amendments caused by County policies and customs.  Defendants argue that the claims against Navinsky, Graeber and Oroke should be dismissed because those claims are redundant of the claims against the Board.  Plaintiffs respond that their official capacity claims for prospective relief against the commissioners are not actions against the government, and are therefore not redundant.

The Supreme Court has recognized that "[t]here is no longer a need to bring official-capacity actions against local government officials [because] local government units can be sued directly for damages and injunctive or declaratory relief."  Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985).  Because official-capacity suits are simply "another way of pleading an action against an entity of which an officer is a agent," the official capacity claims against Leavenworth County Commissioners Navinsky, Graeber and Oroke are really claims against the Board.  Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 n.55 (1978).  Here, plaintiffs have sued the Board directly, and defendants are therefore correct that the claims against Navinsky, Graeber and Oroke are redundant.  Accordingly, such claims should be dismissed.[30]  See Burns v. Bd. of County Comm'rs of the County of Jackson, 197 F. Supp.2d 1278, 1296-97 (D. Kan. 2002) (redundant official-capacity claims dismissed as matter of judicial economy); Sims v. Unified Gov't of Wyandotte County/Kansas City, Kan., 120 F. Supp.2d 938, 944 (D. Kan. 2000) (duplicative official-capacity claims afford no additional relief and should be

---

[30]     Plaintiffs have not sued Navinsky, Graeber and Oroke in their individual capacities, so no claims remain against those parties.

dismissed).

## V.    Plaintiffs' Claims Against Sheriff Zoellner

Under 42 U.S.C. § 1983, plaintiffs allege that Sheriff Zoellner is liable in his official and individual capacities for failure to train and supervise Deputy Peterman in violation of the Fourth and Fourteenth Amendments, and for harassment by John Does 1 and 2 in violation of the First Amendment. With regard to plaintiffs' official capacity claims, defendants argue that Sheriff Zoellner is entitled to sovereign immunity under the Eleventh Amendment. With regard to plaintiffs' individual capacity claims, defendants argue that plaintiffs cannot establish an underlying constitutional violation necessary to impose liability on Sheriff Zoellner.

### A.    Official Capacity Claims

Defendants argue that Sheriff Zoellner is entitled to Eleventh Amendment immunity on plaintiffs' official capacity claims because he is an officer of the State of Kansas. The Eleventh Amendment doctrine of sovereign immunity bars actions for damages against a State, its agencies and its officials acting in official capacities, see Graham, 473 U.S. at 165-67, including actions arising under Section 1983, Klein v. Univ. of Kan. Med. Ctr., 975 F. Supp. 1408, 1415 (D. Kan. 1997). The law is unclear, however, whether Sheriff Zoellner is an officer of the State. Compare Bd. of County Comm'rs of the County of Lincoln v. Nielander, 275 Kan. 257, 261, 62 P.3d 247, 251 (2003) (holding that sheriff is state officer whose duties, powers and obligations derive from legislature), with Schroeder v. Kochanowski, 311 F. Supp.2d 1241, 1249 n.23 (D. Kan. 2004) (rejecting argument that sheriff is state official and that Eleventh Amendment bars claim against him), and Stevenson, 52 Fed. Appx. at 446 (official capacity claims against sheriff equivalent to action against county).

The Court need not resolve this issue, however, because plaintiffs' official capacity claim should be dismissed whether Sheriff Zoellner is an officer of the State or an officer of the County. If Sheriff Zoellner is an officer of the State, he enjoys Eleventh Amendment immunity from suit in his official capacity. See Meade v. Grubbs, 841 F.2d 1512, 1529 n.17 (10th Cir. 1988). If he is an officer of Leavenworth County, the official capacity claims against him are redundant because they are actually claims against the County itself, and plaintiffs' have separately sued the Board. See Monell, 436 U.S. at 691 n.55. Sheriff Zoellner is therefore entitled to summary judgment on plaintiffs' official capacity claims against him.

### B.     Individual Capacity Claims

Defendants argue that Sheriff Zoellner is entitled to summary judgment on plaintiffs' individual capacity claims against him because plaintiffs have not established an underlying constitutional violation. Under Section 1983, government officials are not vicariously liable for the misconduct of subordinates. Serna v. Colo. Dep't of Corr., 455 F.3d 1146, 1151 (10th Cir. 2006). A supervisor may be held individually liable for constitutional violations of subordinates, however, where the supervisor fails to adopt or implement policy or training of subordinates to prevent deprivations of constitutional rights. Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1241 (10th Cir. 1999). To establish a Section 1983 claim against a supervisor for the unconstitutional acts of his subordinates, plaintiffs must first show that the subordinates violated the constitution. Serna, 455 F.3d at 1151. Plaintiffs must then show an "affirmative link" between the supervisor and the constitutional violation, i.e. the active participation or acquiescence of the supervisor in the constitutional violation. Id. (citing Holland v. Harrington, 268 F.3d 1179, 1187 (10th Cir. 2001)).

On this record, defendants correctly argue that plaintiffs have not demonstrated a genuine issue

of material fact whether Sheriff Zoellner is liable for the conduct of his subordinates.  Plaintiffs have not

established a genuine issue of material fact whether Deputy Peterman violated the Fourth or Fourteenth

Amendment rights of Jared Moore.  In addition, even if John Does 1 and 2 violated the First Amendment

rights of Marlene and Patrick Moore, plaintiffs offer no evidence of an affirmative link between Sheriff

Zoellner and those unidentified deputies.  See Mee v. Ortega, 967 F.2d 423, 430-31 (10th Cir. 1992) (by

itself, fact that defendant supervises alleged wrongdoer not sufficient to establish personal participation

under Section 1983).  Sheriff Zoellner is therefore entitled to summary judgment on plaintiffs' individual

capacity claims.

**VI.     Plaintiffs' Claims Against Former Sheriff Nye**

Under 42 U.S.C. § 1983, plaintiffs allege that Sheriff Nye is individually liable for failure to train

and supervise Deputy Peterman in violation of the Fourth and Fourteenth Amendments.[31]  Like the

individual capacity claims against Sheriff Zoellner, plaintiffs must establish an underlying constitutional

violation by Deputy Peterman before Sheriff Nye may be held individually liable as Deputy Peterman's

supervisor.  See Serna, 455 F.3d at 1151.  As noted above, plaintiffs have not established that Deputy

Peterman violated Jared Moore's rights under the Fourth or Fourteenth Amendments.  Consequently,

plaintiffs may not maintain a claim against Sheriff Nye premised on supervisor liability, and he is entitled to

---

[31]     Although plaintiffs allege that defendants collectively deprived Marlene and Patrick Moore of rights under the First Amendment, the facts make clear that Sheriff Nye cannot be found liable for any First Amendment claim.  Specifically, the acts of unidentified deputies constituting the alleged First Amendment violations occurred in September of 2005, after Sheriff Zoellner replaced Sheriff Nye in office. Thus, even assuming that plaintiffs could establish a First Amendment violation by John Does 1 and 2, Sheriff Nye could not have personally participated in the violations and plaintiffs cannot establish the affirmative link between Sheriff Nye and those deputies necessary to create supervisor liability.  See Serna, 455 F.3d at 1151.

summary judgment on plaintiffs' individual capacity claims.

**VII.   Plaintiffs' Partial Motion For Summary Judgment**

Plaintiffs seek summary judgment on their claims for injunctive and declaratory relief related to defendants' alleged violations of the Fourth and Fourteenth Amendments.

**A.       Injunctive Relief**

Plaintiffs seek a preliminary injunction to prevent future injury to other first responders, and argue that defendants have demonstrated that they are not concerned with the safety risks created by their conduct, policies and procedures.   To obtain a preliminary injunction, plaintiff must establish (1) a substantial likelihood that it will eventually prevail on the merits; (2) irreparable injury unless the preliminary injunction issues; (3) that the threatened injury outweighs whatever damage the proposed preliminary injunction may cause defendants; and (4) that the preliminary injunction, if issued, will not be adverse to the public interest.  Tri-State Generation & Transmission Ass'n., Inc. v. Shoshone River Power, Inc., 805 F.2d 351, 355 (10th Cir. 1986).

The Court's rulings on defendants' motions for summary judgment demonstrate that plaintiffs cannot establish a substantial likelihood of success on the merits of their Fourth and Fourteenth Amendment claims. Plaintiffs are therefore not entitled to summary judgment on their claim for preliminary injunctive relief.

**B.       Declaratory Relief**

Plaintiffs also seek a declaration that the conduct of defendants has violated their rights, and the rights of Jared Moore, under the United States and Kansas Constitutions.  Such relief is improper because it would amount solely to a determination that plaintiffs were wronged.  See Prier v. Steed, 456 F.3d 1209, 1214 (10th Cir. 2006); see also Utah Animal Rights Coal. v. Salt Lake City Corp., 371 F.3d 1248, 1263

-31-

(10th Cir. 2004) (McConnell, J., concurring) (plaintiff may not seek declaratory relief for moral satisfaction of judicial ruling that plaintiff was right and adversary was wrong).  Further, the Court's rulings on defendants' motions for summary judgment demonstrate that plaintiffs are not entitled to such declaration because as a matter of law, their rights have not been violated.  Plaintiffs are not entitled to summary judgment on their claim for declaratory relief.

**VII.    Plaintiffs' Remaining State Law Claims**

Plaintiffs allege violations of the Kansas Constitution, the Kansas Open Records Act, K.S.A. § 45-215 et seq., and the Kansas Tort Claims Act, K.S.A. § 75-6101 et seq.  Defendants request that the Court decline to exercise supplemental jurisdiction over these remaining state law claims, and dismiss them under 28 U.S.C. § 1367(c).  Plaintiffs do not respond the defendants' request.

In its discretion, the Court may exercise supplemental jurisdiction over state law claims if they sufficiently relate to a pending claim over which the Court has original jurisdiction.  See 28 U.S.C. § 1367(a).  The Court need not exercise supplemental jurisdiction, however, and it may decline to do so if it has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c).  Here, the Court has dismissed all of plaintiffs' federal claims, and has no independent jurisdictional basis over plaintiffs' remaining state law claims.[32]  Because plaintiffs raise novel claims under the Kansas Constitution and the Kansas Open Records Act, and because plaintiffs have not opposed defendants' request that the Court decline to exercise supplemental jurisdiction over the remaining state law claims, the Court agrees that it

---

[32]    Plaintiffs have not alleged diversity jurisdiction, and the parties' stipulations, see Pretrial Order (Doc. #76) filed October 19, 2006, at 2-3, make clear that this action lacks complete diversity.  See Radil v. Sanborn W. Camps, Inc., 384 F.3d 1220, 1225 (10th Cir. 2004) (diversity jurisdiction, 28 U.S.C. § 1332, requires complete diversity between all plaintiffs and all defendants).

should not exercise supplemental jurisdiction over those state law claims.  Plaintiffs' state law claims are therefore dismissed without prejudice.

**IT IS THEREFORE ORDERED** that Defendants Board Of County Commissioners Of The County Of Leavenworth, Kansas, Navinsky, Graeber, Oroke, Zoellner, And Nye's Motion For Summary Judgment (Doc. #69) filed October 13, 2006 be and hereby is **SUSTAINED**.

**IT IS FURTHER ORDERED** that Defendant Robert L. Peterman's Motion For Summary Judgment (Doc. #71) filed October 13, 2006 be and hereby is **SUSTAINED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion For Partial Summary Judgment, For Declaratory Judgment And For Preliminary Injunction (Doc. #74) filed October 13, 2006 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that plaintiffs' Motion To Strike Affidavit Of Robert Peterman On Training (Doc. #88) filed November 27, 2006 be and hereby is **OVERRULED** as moot.

**IT IS FURTHER ORDERED** that plaintiffs' state law claims under the Kansas Constitution, the Kansas Open Records Act, K.S.A. § 45-215 et seq., and the Kansas Tort Claims Act, K.S.A. § 75-6101 et seq. be and hereby are **DISMISSED** without prejudice.

Dated this 22nd day of January, 2007 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge